UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JONATHAN JOHNSON and DORIS JOHNSON, <br><br> Plaintiffs, <br><br> v. <br><br> SUN & CHANG CORPORATION, <br><br> Defendant. | CAUSE NO. 3:20-CV-256 DRL-MGG |

OPINION & ORDER

Sun & Chang Corporation used to operate the Jade Garden restaurant in Elkhart, Indiana. Jonathan and Doris Johnson claim the company violated the Fair Labor Standards Act and Indiana's Wage Payment Statute by not paying them wages and overtime as restaurant workers. The court has federal question jurisdiction over this suit. *See* 28 U.S.C. § 1331.

The company filed a counterclaim alleging the Johnsons interfered with employee relations, interfered with business relations, publicly defamed the restaurant, converted restaurant property, and breached fiduciary duties to the company, some of which caused the restaurant to go out of business. The Johnsons argue that the court lacks subject matter jurisdiction over these counterclaims— particularly supplemental jurisdiction under 28 U.S.C. § 1367.

The court focuses only on supplemental jurisdiction. Sun & Chang argues alternatively that its counterclaims have an independent basis for jurisdiction—diversity jurisdiction under 28 U.S.C. § 1332—but, even if that were a suitable alternative to the framework of supplemental jurisdiction, *see, e.g.*, *El v. AmeriCredit Fin. Servs., Inc.,* 710 F.3d 748, 752-53 (7th Cir. 2013), the company hasn't sufficiently pleaded diversity. It merely alleges it is an Indiana corporation without stating its principal place of business. *See* 28 U.S.C. § 1332(c)(1). And it merely alleges the Johnsons are residents of Kentucky without stating their citizenship, none too casual a concern when the company says the

Johnsons only "fled" to Kentucky. *See Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) ("residence may or may not demonstrate citizenship, which depends on domicile—that is to say, the state in which a person intends to live over the long run"); *Meyerson v. Harrah's E. Chi. Casino*, 299 F.3d 616, 617 (7th Cir. 2002) (residence insufficient to establish diversity jurisdiction). On the pleading here, supplemental jurisdiction it must be then, or nothing.

Section 1367(a) authorizes the court to exercise jurisdiction to the full extent of Article III's "case or controversy" requirement. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 682 (7th Cir. 2014). Because original jurisdiction here stems from a federal question, the court has supplemental jurisdiction over counterclaims "so related" to the federal claim "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The distinction between compulsory and permissive counterclaims seems impertinent to today's discussion. *See* Fed. R. Civ. P. 13. Since 1990 when Congress codified supplemental jurisdiction, the court need only determine whether it has such jurisdiction under 28 U.S.C. § 1367(a). *See Channell v. Citicorp Nat'l Servs., Inc.*, 89 F.3d 379, 385 (7th Cir. 1996).

"Article III confers federal jurisdiction over cases or controversies rather than over claims." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1181-82 (7th Cir. 1993). Claims form part of the same case or controversy when they "derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966); *see Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (same statement); *Ammerman v. Sween*, 54 F.3d 423, 424 (7th Cir. 1995) (concluding that § 1367 ratified *Gibbs*). "A loose factual connection is generally sufficient." *Houskins*, 549 F.3d at 495. Just how loose that connection may be remains the subject of case-by-case analysis, *see Prolite Bldg. Supply, LLC v. MW Mfrs., Inc.*, 891 F.3d 256, 258 (7th Cir. 2018), and at times that analysis may prove painstaking to meet the case's complexity, *see, e.g.*, *McCoy*, 760 F.3d at 679-84.

Following this guidance, the court addresses the defamation claim first. Putting aside alleged defamatory statements made about the company's owner or spouse, as there would seem to be no standing on this record for the company to sue to redress their personal harm, *see Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Foundations of E. Chi., Inc. v. City of E. Chi.*, 927 N.E.2d 900, 903 (Ind. 2010), the company alleges that the Johnsons falsely published that the company was breaking labor and tax laws. Without wading into the sufficiency of this defamation allegation (given that the Johnsons have moved only under Rule 12(b)(1) and not Rule 12(b)(6)), this defamation claim derives from a nucleus of operative fact common to the wage claim—namely, whether the company paid the Johnsons their wages or violated labor and tax laws. Truth is a defense to any defamation claim, *see West v. J. Greg Allen Builder, Inc.*, 92 N.E.3d 634, 646 (Ind. Ct. App. 2017), so it seems that the defamation claim may rise or fall in part on whether the Johnsons can prove their wage violations. *See, e.g., McCoy*, 760 F.3d at 679-84 (false statements about a company's service and contract breaches arose from the same events supporting federal antitrust claims). The defamation claim thus forms part of the same constitutional case or controversy.

The conversion claims (one tortious and the other under Indiana's Crime Victims Relief Act) allege that the Johnsons used the company's assets and the restaurant's premises to make and sell other food items. The fiduciary duty and unjust enrichment claims echo this allegation. The Johnsons seem to admit that small profits were gleaned from their entrepreneurial activities on the job and plead in fact that these activities were done "to supplement the inadequate and illegal compensation paid by [Sun & Chang]," as approved by the company. Accordingly, the original federal claim and these counterclaims rest on whether the Johnsons were really working for Sun & Chang at the time of these activities and thus were entitled to wages—that is, whether this arrangement had been approved such that they should be paid, or whether their work at the time actually was for another business such that

they shouldn't be paid. This common nucleus of operative fact makes these damage claims part of the same case or controversy.

The two interference claims lack this common nexus of operative fact to constitute the same case or controversy. The Johnsons worked for the company from the fall 2013 until late 2019. The company alleges that on one occasion, a few months before they resigned, Jonathan Johnson became irate with a female employee for giving egg rolls to the wrong customer. As alleged, Mr. Johnson became physical, pulled out a gun, and threatened to shoot her. The company says Doris Johnson watched but failed to stop him. The threatened employee and her husband who also worked for the restaurant quit; and, when the Johnsons thereafter quit too and "fled" to Kentucky without telling anyone, the restaurant was left with only two employees who could not run it. On this record, this egg roll caper bears no apparent relationship to the federal wage claim other than it arises, and then only generally, from the employment relationship, though even then one might say that only slackly because the allegations describe an intentional criminal act (assault), not one originating in any traditional employment relationship for a restaurant, whether he was a manager or not. This interference claim shares no common factfinding, elements, or operative facts with the federal wage claim. However loose is meant by loose, *see Prolite Bldg. Supply*, 891 F.3d at 258, this isn't it.

In the other interference claim, Sun & Chang allege the Johnsons published "statements and remarks" amounting to "alleged photographs" of the restaurant "showing dirty and filthy pictures of the location, which the Johnsons were responsible for ensuring were cleaned." The company alleges these published pictures were malicious and unjustified and intentionally interfered with its business relations. It strains credulity that this might be sufficient to adumbrate this tort, *see, e.g., Levee v. Beeching*, 729 N.E.2d 215, 222-23 (Ind. Ct. App. 2000), but jurisdiction comes first, and it proves absent here. There isn't a common nucleus of operative fact between these so-called filthy pictures and the federal wage claim so as to constitute the same case or controversy.

No matter these determinations, the Johnsons argue that the court should decline supplemental jurisdiction under 28 U.S.C. § 1367(c). Declining supplemental jurisdiction isn't a party's right but an option of discretion that the court exercises "in the manner that best serves the principles of economy, convenience, fairness, and comity." *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 172-73 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988)).

As an initial matter, subsection (c)(3) doesn't apply because the court maintains the claim over which it has original jurisdiction. Neither the defamation claim nor conversion claims raise novel or complex issues of state law, nor would they substantially predominate the claim over which this court has original jurisdiction. *See* 28 U.S.C. §§ 1367(c)(1), (c)(2). Rather than predominate, they are well linked. This isn't one of the "exceptional circumstances" with "compelling reasons" for declining jurisdiction. *See* 28 U.S.C. § 1367(c)(4). Indeed, requiring the claims to proceed in different suits runs the risk of producing inconsistent judgments and causing judicial inefficiency.

The court full well appreciates that this order splits the claims already, leaving the intentional interference claims for the company's reconsideration; but whatever drag that might have on the full measure of disputes between these parties, *cf. Montano v. City of Chi.*, 375 F.3d 593, 602 (7th Cir. 2004), it is slight and doesn't suggest that all state claims should be dismissed. Why the company went out of business and couldn't just hire a new manager or other employees when the Johnsons and those affronted left isn't answered by the counterclaim, but that issue and any unmitigable damages are wholly separate from the controversy here. How the publication of filthy photographs amounts to illegal conduct to sustain an intentional interference claim also isn't answered by the counterclaim. Now isn't the time to decide any merits to be sure. The point is merely that it creates little inefficiency to address these truly separate interference claims elsewhere without batching with them the claims over which the court has supplemental jurisdiction.

Accordingly, the court GRANTS IN PART and DENIES IN PART the motion to dismiss (ECF 18), finding that the court has supplemental jurisdiction over the defamation, conversion, unjust enrichment, and fiduciary duty claims (the latter to the extent it concerns the use of company assets only) in counterclaims 2 and 4-7 and dismissing the remaining counterclaims.

SO ORDERED.

January 8, 2021                                         *s/ Damon R. Leichty*
                                                        Judge, United States District Court