UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JONATHAN JOHNSON and DORIS
JOHNSON,

    Plaintiffs,

  v.              CAUSE NO. 3:20-CV-256 DRL-MGG

SUN & CHANG CORPORATION,

    Defendant.

## OPINION & ORDER

Sun & Chang, Inc. used to operate the Jade Garden Restaurant in Elkhart, Indiana. Jonathan and Doris Johnson claim the company violated the Fair Labor Standards Act (FLSA) and Indiana's wage laws by not paying them wages and overtime as restaurant workers. Sun & Chang pursues counterclaims for defamation, conversion, unjust enrichment, and breach of fiduciary duty. Today the company requests partial summary judgment on the Johnsons' claims. The court grants the motion as to the FLSA claim, thereby unmooring the remaining state law claims jurisdictionally.

## BACKGROUND

Kuang Chang owns Sun & Chang, Inc. The company operated a small Chinese take-out restaurant in Elkhart, Indiana called Jade Garden Restaurant. Sun & Chang didn't have a delivery service. Customers ordered from the counter or called in to place their orders and then picked them up from the counter. The restaurant also had four tables available for customers to dine in.

Jonathan and Doris Johnson worked for Sun & Chang from approximately November 1, 2013 through the first 8.5 workdays in August 2018. About one year later, the Johnsons asked if they could work for Sun & Chang again. They were rehired and worked the last 14 days of August 2019 through December 8, 2019. As part of their job duties, the Johnsons handled local customers who would pick up food in Elkhart, monitored kitchen staff to make sure orders were being assembled correctly,

counted the cash register, waited on customers, accepted payments, and cleaned the facility. The Johnsons did not order goods or services for the restaurant and generally only answered phone calls. The Johnsons had exclusive responsibility for taking and processing customer payments, including credit card payments.

Sun & Chang closed for business in early 2020. The company filed a voluntary dissolution with the Indiana Secretary of State on May 4, 2020. In 2017, the company's gross sales were $272,323; in 2018, its gross sales were $289,241; and in 2019, its gross sales were $316,544. According to Mr. Chang, when the business closed, Sun & Chang's sales in 2020 were below its sales in 2017 through 2019. Sun & Chang never had an annual gross volume of sales near $500,000. The company's 1099-K form for 2019 showed a gross amount of payment by card or third-party network transactions of $328,502.48, whereas the 2019 tax return showed gross sales of $316,544 for that year.

On March 20, 2020, the Johnsons sued Sun & Chang for violating federal and state wage laws. They asserted federal question jurisdiction. Sun & Chang filed several counterclaims against the Johnsons. Counterclaims for defamation, conversion, unjust enrichment, and breach of fiduciary duty remain today after the court's prior ruling on the motion to dismiss [ECF 30].

Several motions now pend. The Johnsons filed a motion to amend their complaint to add Kuang N. Chang and Yuh-Rong Sun as individual defendants [ECF 31]. The Johnsons moved for an extension of discovery in light of the pending motion to amend [ECF 39], and Sun & Chang requested oral argument on the motion to amend [ECF 37]. Sun & Chang moved for partial summary judgment as to all of the Johnsons' claims [ECF 41]. These motions are now ripe.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to

find in his favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll. V. Valparaiso Comty. Schs.*, 953 F.3d 923, 924 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

DISCUSSION

The court begins and ends with the FLSA claim. The Johnsons claim that Sun & Chang violated FLSA by not paying wages and overtime. The company argues that this claim cannot proceed because there is neither individual coverage nor enterprise coverage under federal law.

FLSA mandates "[e]very employer [to] pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages" specified by statute. 29 U.S.C. § 206(a). "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). "FLSA has two grounds for coverage: individual and enterprise." *Mays v. Rubiano, Inc.*, 2021 U.S. Dist. LEXIS 43810, 7 (N.D. Ind. Mar. 9, 2021) (citing *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 295 n.8 (1985)). "If neither is met, FLSA doesn't apply." *Id.*

3

A. *Individual Coverage.*

Individual coverage occurs when an employee "engage[s] in commerce or in the production of goods for commerce." *See* 29 U.S.C. § 206(a). The court looks only to the acts of the employee, not the employer. 29 U.S.C. § 206(a); *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959). The *employee* must be *engaged* in commerce, *see* 29 U.S.C. § 206(a); it isn't enough that his or her activities merely *affect* commerce. *Mitchell*, 358 U.S. at 211; *McLeod v. Threlkeld*, 319 U.S. 491, 497 (1943). For an employee's work to be engaged in commerce, the employee's work must be "so directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity." *Mitchell v. C.W. Vollmer & Co.*, 349 U.S. 427, 429 (1955). The employee has the burden. *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 120 (1946).

There are two ways for individual coverage to attach: the employee must either be "engaged in commerce," or the employee must engage "in the production of goods for commerce." 29 U.S.C. § 206(a). As to the second method, Sun & Chang says the Johnsons had no authority or involvement in purchasing, pricing, sales, promotion, or marketing. In response, the Johnsons never say they were engaged in the production of goods for commerce, thereby waiving any argument concerning this method. *See Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999). Instead, the Johnsons rely on the first method, arguing that they were engaged in commerce because they processed credit card transactions. The Johnsons say they processed, on average, approximately 50 credit card transactions per day, amounting to over $1,000 in daily credit card payments.

The Johnsons cite a case from the Eastern District of New York for the proposition that the processing of credit card transactions has been recognized as engagement in interstate commerce. *See Owusu v. Corona Tire Shop, Inc.*, 2013 U.S. Dist. LEXIS 55381, 10-12 (E.D.N.Y. Apr. 15, 2013). Yet in *Owusu*, the court decided the plaintiff wasn't engaged in interstate commerce because he only used the

4

credit card machine at most once or twice a day, and sometimes not at all. *Id.* at 12. That case then lends little support to the Johnsons' position.

Other courts have found that the processing of credit card transactions isn't enough to satisfy individual coverage under FLSA. *See Thorne v. All Restoration Servs.*, 448 F.3d 1264, 1266 (11th Cir. 2006) ("[plaintiff] did not produce sufficient evidence at trial that his credit card use involved interstate commerce"); *Ecoquij-Tzep v. Hawaiian Grill*, 2016 U.S. Dist. LEXIS 174075, 9-10 (N.D. Tex. Dec. 16, 2016) ("mere usage of credit cards is insufficient for purposes of establishing FLSA individual coverage") (internal quotation marks and citation omitted); *Marckenson v. Peker*, 2011 U.S. Dist. LEXIS 121035, 12 (S.D. Fla. Oct. 19, 2011) ("Plaintiff has failed to produce any evidence indicating that by merely processing credit cards for goods purchased locally he was engaging in interstate commerce.").

Mr. Johnson says he and his wife processed approximately 50 credit card transactions per day, but these transactions were for food purchased locally in Indiana. The Johnsons haven't adduced any evidence to show that these credit card transactions went across state lines. Though they solely rely on the processing of credit card transactions as their hook for individual coverage, which isn't enough, *see Ecoquij-Tzep*, 2016 U.S. Dist. LEXIS 174075 at 9-10 (collecting cases), it is worth noting that the rest of their job duties didn't involve any engagement in interstate commerce. They worked at a small Chinese restaurant in Elkhart, Indiana. They handled local customers who would pick up food at the restaurant, monitored the kitchen staff, counted the cash register, waited on customers, accepted payments, and cleaned the facility. Other courts have decided that this type of work doesn't satisfy the individual coverage requirement. *See Piyou Zhao v. Ke Zhang Inc.*, 2021 U.S. Dist. LEXIS 63639, 8-9 (E.D.N.Y. Mar. 31, 2021) (restaurant employees who only made intrastate food deliveries weren't individually covered); *Li v. Cheng*, 2012 U.S. Dist. LEXIS 40151, 11-13 (E.D.N.Y. Mar. 21, 2012) (restaurant servers who didn't present evidence that they ever communicated with out-of-state

businesses or customers weren't individually covered). On the whole, the Johnsons haven't met their burden to establish individual coverage.

> B. *Enterprise Coverage.*

Enterprise coverage occurs when an employee is "employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). For this to apply, the business must (1) have employees engaged in commerce and (2) have an annual gross volume of sales made or business done of at least $500,000. 29 U.S.C. § 203(s)(1)(A). Though it implicates factual questions, the annual revenue requirement is a question of law for the court. *Hicks v. Avery Drei, LLC*, 654 F.3d 739, 747 (7th Cir. 2011). The court may rely on a business's income tax returns. *See Mays*, 2021 U.S. Dist. LEXIS 43810 at 14; *Jacoby v. Schimka Auto Wreckers, Inc.*, 2010 U.S. Dist. LEXIS 81586, 5 (N.D. Ill. Aug. 11, 2010).

Sun & Chang says there is no enterprise coverage because it hasn't had an annual gross volume of sales of at least $500,000. According to Sun & Chang's tax returns from 2017 through 2019, Sun & Chang's annual gross sales didn't reach $500,000 during any of these years. *See Jacoby*, 2010 U.S. Dist. LEXIS 81586 at 5 ("Income tax returns are a relevant way to show gross sales."). Sun & Chang closed in early 2020; and, according to Mr. Chang, its sales in 2020 were below its sales in the years 2017 through 2019 [ECF 43-1 ¶¶ 7-8]. Mr. Chang says at no relevant time has Sun & Chang ever had an annual gross volume of sales near $500,000 [*id.* ¶ 9]. These facts remain undisputed.

In an attempt to introduce a triable issue, Mr. Johnson says credit card payments made up approximately 42 percent of the restaurant's sales and that the restaurant processed over $1,000 in daily credit card payments [ECF 44-2 ¶¶ 5-6]. He says the remaining sales were paid in cash and amounted to over $1,400 per day on average [*id.* ¶ 7]. He says this estimate is based on contemporaneous notes he kept during the last four months of his employment [*id.*].

Without anything more, these allegations merely speculate about gross sales. *See McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) (mere speculation or conjecture will not defeat a summary judgment motion). Though Mr. Johnson took payments at the restaurant counter, there is no evidence that he was in charge of managing or tracking the restaurant's finances. His estimate regarding daily cash sales is allegedly based on contemporaneous notes that he kept during the last four months of his employment. He didn't attach these notes to his declaration. Furthermore, a four-month sample may not be representative of cash sales throughout other times during the year, and he offers no reasons why they should be. *See Mays*, 2021 U.S. Dist. LEXIS 43810 at 14-16 (dancer's allegations that entertainment club's tax returns weren't credible wasn't enough to defeat summary judgment when she worked at the club for a limited amount of time and didn't manage its finances).

The Johnsons also point out that Sun & Chang's gross amount of payment by card or third-party network transactions for 2019 was $328,502.48 according to its 1099-K form [ECF 44-3], whereas Sun & Chang's gross sales for 2019 was $316,544 according to its federal tax return [ECF 43-5]. They say this fact, along with the fact that Sun & Chang was paying almost its entire payroll in cash, raises questions about the credibility of Sun & Chang's tax returns. In response, Sun & Chang says the Johnsons aren't accountants and they haven't spoken with any of Sun & Chang's accountants. Though it may seem at a glance that a discrepancy exists, it proves immaterial here. Nothing shows that the discrepancy really means that the company earned more than $500,000 in gross sales in 2019. It only raises a speculative doubt. *See McCoy*, 341 F.3d at 604.

The Johnsons haven't introduced competent evidence to show that Sun & Chang's annual gross volume of sales was at least $500,000 during the relevant time period. *See Velasquez v. Salsas & Beer Rest., Inc.*, 2017 U.S. Dist. LEXIS 162672, 13-14 (E.D.N.C. Sept. 28, 2017) (no enterprise coverage when record didn't include competent evidence that the defendants' annual gross volume of sales was $500,000 or more). Because neither Mr. Johnson nor Ms. Johnson are individually covered under

FLSA, and because Sun & Chang is not covered under enterprise coverage, the FLSA claim fails. The court enters summary judgment accordingly.

      C.     *State Law Claims.*

Without the FLSA claim, all that remains are the Johnsons' claims under the Indiana Wage Payment Statute and Sun & Chang's counterclaims for defamation, conversion, unjust enrichment, and breach of fiduciary duty.[1] Under 28 U.S.C. § 1367(c)(3), the court may decline to exercise supplemental jurisdiction over the state law claims after having dismissed all claims over which it has original jurisdiction.[2] "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims[.]" *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). The court declines to retain jurisdiction over the state law claims in this case.

To the extent either side has concerns about a statute of limitations issue, they may attempt to seek relief under the Indiana Journey's Account Statute, which "permit[s] lawsuits to continue after dismissals on technical grounds." *Munoz v. Woroszylo*, 29 N.E.3d 164, 168 (Ind. Ct. App. 2015). The court hasn't yet expended substantial judicial resources on the state law claims. Because the court hasn't reached the merits of these claims, there is no efficiency in having the court resolve them. Accordingly, the court dismisses the state law claims without prejudice to them being pursued in state court. *See* Fed. R. Civ. P. 12(h)(3). The court denies the remaining motions as moot.

---

[1] The court notes that there is still a pending motion to amend the complaint [ECF 31]. As part of that motion, the Johnsons are seeking to add Kuang N. Chang and Yuh-Rong Sun as individual defendants. They aren't seeking to add any new federal claims. Any claims under FLSA against Mr. Chang and Ms. Sun would also fail because there isn't individual or enterprise coverage.

[2] In the original complaint and proposed amended complaint, the Johnsons assert federal question jurisdiction as the basis for the court's subject matter jurisdiction, without pleading diversity jurisdiction [ECF 1; ECF 31-1]. In Sun & Chang's response to the Johnsons' motion to dismiss its counterclaims, it argued that the court could exercise diversity jurisdiction over this case [ECF 23 at 6-8]. The court already explained in its order ruling on the motion to dismiss that diversity jurisdiction hasn't been sufficiently pleaded [ECF 30 at 1-2].

CONCLUSION

Construing all facts and reasonable inferences in favor of Johnathan Johnson and Doris Johnson, the court GRANTS IN PART Sun & Chang's motion for partial summary judgment as to the FLSA claims and DENIES AS MOOT the motion as to the Indiana Wage Payment claims [ECF 41]. The court DENIES AS MOOT the motion to amend the complaint [ECF 31], the motion for oral argument [ECF 37], and the motion to extend discovery [ECF 39]. Because federal question jurisdiction no longer exists, the court DISMISSES the remaining state law claims for lack of subject matter jurisdiction without prejudice to these claims being pursued in state court. This order terminates the case.

SO ORDERED.

November 17, 2021                     *s/ Damon R. Leichty*
                                      Judge, United States District Court